HADNOTT ET AL. *v.* AMOS, SECRETARY OF
STATE OF ALABAMA, ET AL.

No. 647. Argued January 21, 1969.—Decided March 25, 1969.

*Charles Morgan, Jr.,* argued the cause for appellants. With him on the brief were *Reber F. Boult, Jr., Orzell Billingsley, Jr., Robert P. Schwenn, Melvin L. Wulf,* and *Eleanor Holmes Norton.*

*L. Drew Redden,* Special Assistant Attorney General of Alabama, argued the cause for appellees Amos et al.

With him on the brief were *MacDonald Gallion*, Attorney General, *pro se, John G. Bookout,* Deputy Attorney General, and *Gordon Madison* and *Leslie Hall,* Assistant Attorneys General.

*Louis F. Claiborne* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Pollak, Nathan Lewin,* and *Frank M. Dunbaugh.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This suit is a class action brought by the National Democratic Party of Alabama (NDPA) and some of its officers and candidates in the 1968 general election against Alabama state officials who had refused to include various NDPA candidates on the ballot for various county and state-wide offices. As the complaint sought an injunction against enforcement of Alabama statutes on federal constitutional grounds, a three-judge federal court was impaneled. 28 U. S. C. § 2281.

The District Court entered a temporary restraining order. Thereafter appellees filed their answer challenging, *inter alia,* the qualifications of NDPA candidates because of their failure to satisfy certain specified requirements of Alabama law. On October 11, 1968, after a hearing on the merits, the three-judge court, by a divided vote, dissolved the temporary injunction and upheld on their face and as applied all the challenged Alabama statutes.

Appellants appealed to this Court (28 U. S. C. § 1253) and on October 14 we restored the District Court's temporary restraining order, saying: "The application for restoration of temporary relief is granted pending oral argument on the application, which is set for Friday, October 18, 1968, at 9:00 a. m. The case is placed on the summary calendar."

And on October 19, 1968, we entered an additional order providing in part:

"The order entered October 14, 1968, restoring temporary relief is continued pending action upon the jurisdictional statement which has been filed."

NDPA candidates, mostly Negroes, were elected to various local offices in Etowah, Marengo, and Sumter Counties. But in Greene County the NDPA candidates for local office were left off the ballot except for absentee voters. In Greene County the only candidates appearing on the ballot were the regular Democratic Party nominees for local offices and they received between 1,699 and 1,709 votes each. It appears that NDPA candidates in Greene County would have won had they been on the ballot[1] for 1,938 ballots were marked for the NDPA "straight ticket."

On November 15 appellants filed in this Court a motion to show cause why James D. Herndon, Probate Judge, Greene County,[2] should not be held in contempt and why the election in Greene County should not be set aside and a new one held. Later the United States moved in the District Court for relief and that court issued a rule to show cause why the results of the November election in Greene County should not be enjoined. The District Court stayed giving effect to the Greene County election.

We have heard argument on the jurisdictional statement and on the motion to hold Judge Herndon in contempt. On the merits of the appeal, we reverse.

*First.* The Alabama Corrupt Practices Act requires each candidate within five days "after the announcement

---

[1] NDPA ran mostly Negro candidates—60 out of 67. In Greene County, Negroes of voting age are in a numerical majority—5,001 Negro, 1,649 white, according to the 1960 census.

[2] Under Alabama law the probate judges have responsibility for preparing ballots to be used in each of the State's counties.

of his candidacy for any office" to file a statement show-
ing "the name of not less than one nor more than five
persons" chosen to receive, expend, audit, and disburse
funds for his election. Ala. Code, Tit. 17, § 274 (1958).

The disqualification of the NDPA candidates for their
alleged failure to satisfy this provision of the Alabama
Act implicates Probate Judge Herndon, who was respon-
sible for the preparation of the Greene County ballot
which omitted their names.

In this case the black candidates for Greene County
offices designated finance committees in February 1968
prior to their entry in the Democratic primary. Appel-
lees contend that it was sufficient to justify Judge Hern-
don's omission of the names that the NDPA candidates
did not file a second designation of financial committee
after May 7, the date of the primary, and the date on
which those candidates were nominated by the NDPA.
Appellants contend that disqualification for that reason
constituted discriminatory enforcement of the Corrupt
Practices Act in violation of the Equal Protection Clause.
Since the names of the white candidates who won the May
7 primary were placed on the ballot, although they also
did not file a second designation after that date, appellees
clearly have the burden of justifying the denial of ballot
places to the black NDPA candidates. Appellees have
failed to satisfy that burden.[3]

Alabama law requires all candidates for local office,
not selected in primaries, to be nominated by mass meet-
ing on the first Tuesday in May of the election year.
Ala. Code, Tit. 17, §§ 413, 414 (1958). The certificate
of nomination sent to Judge Herndon, probate judge for

---

[3] After first notifying the NDPA of its failure to file a certified
list of its candidates with her office, the Secretary of State then
notified the party of her willingness to accept such nominations
filed by September 5. According to the Secretary of State, the
NDPA complied with her condition by filing on time.

Greene County, on September 4, stated that NDPA nominees had been selected pursuant to a mass meeting.

On September 18 the District Court temporarily restrained the omission from the ballot of NDPA candidates for state and local office. That restraint was dissolved on October 11. Meanwhile counsel for the white Greene County candidates, who was the county solicitor, prompted Judge Herndon to file an affidavit in which he stated that to the "best of [his] knowledge and belief" the NDPA held no local mass meeting on May 7 at which nominations were made, and further that none of the six NDPA candidates "filed or offered to file in [his] office" the designation of financial committee required by the Corrupt Practices Act. Yet when his deposition was taken on December 27, the judge conceded that the mass meeting might have been held without his hearing about it and admitted knowledge that the black candidates had filed designations of financial committee in February. He did not say why in these circumstances the February filing did not suffice for the general election; the designations refer to candidacies for the general election as well as the primary election.[4] Nor did he offer any explanation why if the February filings by the white

---

[4] The form itself and the instructions on the back of the form make clear that filing of the form fulfills the requirements of the Alabama Corrupt Practices Act for "nomination or election." In the typical form filed, as printed in the dissenting opinion, the committee designated is named "for the purpose of aiding or promoting my *nomination or election*." (Emphasis supplied.) Moreover, printed instructions on the backside to both "candidates for State offices" and "candidates for County offices" state:

"A copy of this announcement of candidacy filed with the Secretary of State and Probate Judge[s] will meet the requirements of Section 274 of Title 17, Alabama Code of 1940, as amended [Corrupt Practices Act], where the candidate himself (rather than a committee) intends to receive, disburse and report on *all monies used in promoting his nomination or election*." (Emphasis supplied.)

candidates sufficed for the general election, the filings
of the black candidates should be treated differently.
The record is therefore utterly devoid of any explana-
tion adequate to satisfy appellees' burden. It is true
that at oral argument in this Court counsel for appellees
suggested that the Alabama courts might construe the
statutory words—"[w]ithin five days after the announce-
ment of his candidacy . . . each candidate for a county
office . . . shall file [the designation statement] with the
judge of probate"—to require a second filing by losers
in a primary who stand at the general election as candi-
dates of another party. But it was not urged, nor could
it be on this record, that appellees' distinction between
the black and white candidates was rested on that
construction.

We deal here with Fifteenth Amendment rights which
guarantee the right of people regardless of their race,
color, or previous condition of servitude to cast their votes
effectively and with First Amendment rights which in-
clude the right to band together for the advancement of
political beliefs. *Williams* v. *Rhodes,* 393 U. S. 23.
While the regulation of corrupt practices in state and
federal elections is an important governmental function,
we refuse to accept a reading of an Act which gives such
a loose meaning to words and such discretionary authority
to election officials as to cause Fifteenth and First Amend-
ment rights to be subject to disparate treatment. That
risk is compounded here where the penalty is the irrevo-
cable striking of candidates from the ballot without notice
or an opportunity for contest and correction.

When the Alabama Act is construed as appellants'
opponents were allowed to construe it without suffering
disqualification, we conclude that appellants met the
same requirements. Unequal application of the same law
to different racial groups has an especially invidious
connotation.

*Second.* In 1967 Alabama passed the Garrett Act (L. 1967, Act 243) barring from the ballot in a general election a candidate for a state, district, or federal office "who does not file a declaration of intention to become a candidate for such office with the secretary of state on or before the first day of March of the year in which such general election is held." The Garrett Act also requires a declaration of the political party whose nomination the candidate seeks; or if he is not a party candidate that he will run as an independent. A like provision bars probate judges from printing on ballots the names of candidates for county offices unless they have filed a declaration of intention on or before the prior March 1. Accordingly, appellees justify their disqualification of NDPA candidates in Etowah, Marengo, and Sumter Counties, and Judge Herndon justifies his omission of those candidates from the Greene County ballot, on the ground that they did not comply with the Garrett Act.

Prior to the Garrett Act, every candidate desiring to run in a primary was required to file a declaration of candidacy by March 1. Ala. Code, Tit. 17, § 348 (1958). Independents were exempt from this requirement and they were able to get on the ballot after nomination by a mass meeting held on the first Tuesday in May. *Id.* §§ 413, 414. As a result of the Garrett Act, an independent candidate had to decide whether to run at the same time as candidates in the primary made their determination.

The question is whether the Garrett Act is affected by § 5 of the Voting Rights Act of 1965, 79 Stat. 439, 42 U. S. C. § 1973c (1964 ed., Supp. III), which provides that whenever States like Alabama seek to administer "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964," the

State may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that "such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color." It is further provided in § 5 that unless and until the District of Columbia court enters such judgment "no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure." [5]

The Garrett Act is in respects material here on all fours with *Whitley* v. *Williams,* 393 U. S. 544, in which we held that a like provision added to the Mississippi Code could not be applied until it had been approved in one of the two ways provided in § 5 of the Voting Rights Act of 1965.

In the *Whitley* case we dealt with a new Mississippi law which, *inter alia,* changed the time for filing a petition as an independent candidate from 40 days before the *general* election to 60 days before the *primary* election.

We held that this new provision was subject to § 5 of the Voting Rights Act of 1965 as it was aimed "at increasing the difficulty for an independent candidate to gain a position on the general election ballot." *Id.,* at 570. And we added that that change "might also undermine the effectiveness of voters who wish to elect independent candidates." *Ibid.* The increased barriers placed on independent candidates by Alabama's Garrett Act likewise bring it within the purview of § 5 of the Federal Act. The Alabama officials, therefore, acted unlawfully in disqualifying independent candidates in the 1968 election for failure to comply with the Garrett Act.

---

[5] Section 5 contains an alternative procedure of submitting the changed provisions to the Attorney General, in which case they become enforceable upon failure of the Attorney General to object.

On the merits, we reverse the District Court and remand the cause with directions (1) to issue an appropriate order requiring the prevailing NDPA candidates in Etowah, Marengo, and Sumter Counties to be treated as duly elected to the offices for which they ran; and (2) to require the state and local officials promptly to conduct a new election in Greene County for the various county offices contested by NDPA candidates,[6] at which election the NDPA candidates for those respective positions shall appear on the ballot.

The motion to hold Judge Herndon in contempt will be disposed of in a separate opinion.

*It is so ordered.*

MR. JUSTICE BLACK took no part in the consideration or decision of this case.

MR. JUSTICE WHITE, with whom MR. JUSTICE STEWART joins, dissenting in part.

As I understand the arguments in this case, appellees suggest that whatever reasons state officials may have given for excluding appellants from the ballot, the exclusion and the judgment below are sustainable on independent grounds, at least as to the Greene County NDPA candidates. The Corrupt Practices Act, it is said, required the filing of committee designations not only when appellants became Democratic Party candidates* and entered the primary but when, after losing

---

[6] These are the offices of County Commissioner for Districts 1, 2, 3, and 4, and Places 1 and 2 on the County Board of Education.

*At that time they filed designations which were, as the Solicitor General concedes, "in terms directed to the Democratic Primary, rather than the general election." A typical designation read in the relevant part as follows:

"I hereby declare myself to be *a candidate for the Democratic nomination* (or election) *in the Primary Elections* to be held on

the primary, they announced their candidacy under the banner of another party. If the Alabama courts so construed the statute, I would not think the Court would reverse this case unless it held the Corrupt Practices Act unconstitutional. Of course, the Alabama courts have not passed on this question to date. But the issue is not frivolous and I would not construe the statute here in the first instance, which the Court in effect does, but would remand the matter to the three-judge court for its interpretation of Alabama law. On the other issues in the case, I agree with the Court.

---

Tuesday, the 7th day of May, 1968, and on Tuesday, the 4th day of June, 1968, for the office of County Commissioner for

|         Greene          |  #1  |
| --- | --- |
| (District, Circuit or *County*, if applicable) | (Place Number, if applicable) |

.         .         .         .         .

"If I am *a candidate for the Democratic nomination* for Judge of a Court of Record, I do further certify that at the time of filing this Declaration of Candidacy I am not under disbarment or suspension.

"I hereby certify and declare that I appoint myself (and hereby accept the appointment) as the sole and only person or committee to receive, expend, audit and disburse all monies contributed, donated, subscribed, or in any way furnished or raised for the purpose of aiding or promoting my nomination or election as *such* candidate for said office in accordance with Sections 274 and 275 of Title 17 of the Code of Alabama of 1950, as amended (Corrupt Practices Act). [Emphasis added.]

| "Vassie Knott |
| --- |
| "(Signature of Candidate)." |