John E. WHITE, Plaintiff,

v.

**DOUGHERTY COUNTY BOARD OF EDUCATION et al., Defendants.**

Civ. A. No. 76–29Alb.

United States District Court,
M. D. Georgia,
Albany Division.

March 27, 1977.

John R. Myer, Atlanta, Ga., for plaintiff.

Jesse W. Walters, Albany, Ga., for defendants.

Before MORGAN, Circuit Judge, BOOTLE, Senior District Judge, and OWENS, District Judge.

OWENS, District Judge:

In 1965 Congress enacted the Voting Rights Act to eliminate the racial discrimination in voting that Congress believed to still exist in a minority of the states of these United States, chiefly those in the traditional South. As contemplated, only eleven states were brought within the coverage[1] of the Act—South Carolina, Alabama, Alaska, Georgia, Louisiana, Mississippi, Virginia, twenty-six counties in North Carolina, three counties in Arizona, one county in Hawaii, and one county in Idaho. *South Carolina v. Katzenbach,* 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966).

Section Five of the Act, 42 U.S.C.A. § 1973c, provides that whenever a covered state or political subdivision "shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964 . . . ." it may not utilize or implement such change until (a) it has secured a judicial determination in the U.S. District Court for the District of Columbia that the change does not have the purpose or effect of denying the right to vote on account of race or (b) it has submitted such change to the Attorney General of the United States and the Attorney General has not interposed an objection within sixty days. While the Act does not specifically provide a remedy for failure to comply with Section Five, the Supreme Court has held that a complaint for injunctive relief to be heard by a district court of three judges may be filed in any U. S. District Court and that court if it is shown that Section Five applies must enjoin the utilization or implementation of such change until Section Five is complied with. *Allen v. Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969).

While the word "vote" is broadly defined in the Act, to wit: "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast . . ." 42 U.S.C.A. § 1971(e), the outer limits of the applicability of the Act remained in doubt and subject to argument until the Supreme Court decided *Allen, supra,* in 1969.

The *Allen* decision disposed of appeals in three separate cases from Mississippi and one from Virginia. The Mississippi cases concerned (1) a Mississippi law authorizing county officials to change from district to at-large elections, (2) a Mississippi law eliminating the option of certain counties to elect or appoint a county superintendent of education and specifying that the superintendent shall be appointed, and (3) a Mississippi law changing the requirements for independent candidates running in general elections. The Virginia case involved a bulletin issued by the Virginia Board of Elections changing procedures for illiterates to vote. Pointing to the broad definition of the word "vote" and the legislative history of the Act, the Court rejected the invitation to narrowly construe the applicability of the

---

1. As originally enacted, the law was to apply "in any State or in any political subdivision of a state which (1) the Attorney General determines maintained on November 1, 1964 any test or device, and with respect to which (2) the Director of the Census determines that less than 50 percentum of the persons of voting age residing therein were registered on November 1, 1964, or that less than 50 percentum of such persons voted in the presidential election of November 1964." 42 U.S. C.A. Sec. 1973b(b).

The appropriate determinations subjecting Georgia and its political subdivisions to the Act were made on August 6, 1965, and published in the Federal Register on August 7, 1965. 30 Fed.Reg. 9897.

Act to just the voting process and proceeded to find that the Act was "intended to reach any state enactment which altered the election law of a covered state *in even a minor way. . . .*" *Allen, supra,* at 566, 89 S.Ct. at 832, 22 L.Ed.2d at 17 (emphasis added). The Virginia bulletin and each of the Mississippi laws were held to be encompassed by the Act, and each District Court was instructed "to issue injunctions restraining the further enforcement of the enactments until such time as the States adequately demonstrate compliance with § 5." *Id.* at 572, 89 S.Ct. at 835, 22 L.Ed.2d at 21.

Relying on Section Five as broadly interpreted, the plaintiff John E. White, a black citizen of Dougherty County, Georgia, filed his complaint alleging that in May 1972 while employed by the Dougherty County Board of Education, he publicly announced his intention to become a candidate for a seat in the House of Representatives of the General Assembly of Georgia. Plaintiff White states that he thus became the first black in recent years to seek election in Dougherty County as a Representative to the General Assembly. In June 1972 the defendant Dougherty County Board of Education for the first time adopted the following policy known as Rule 58:

"POLITICAL OFFICE. Any employee of the school system who becomes a candidate for any elective political office, will be required to take a leave of absence, without pay, such leave becoming effective upon the qualifying for each elective office and continuing for the duration of such political activity, and during the period of service in such office, if elected thereto."

As required by this rule the plaintiff took a leave of absence without pay from the time of his qualification as a Democratic primary candidate in June 1972 until his defeat in the Democratic primary election in August 1972. In June 1974 he again qualified to run for the same office and was required to take a leave of absence from his employment on June 12, through and including his winning the August 1974 primary election and the November 1974 general election. Following the general election of November 5 he was reinstated in his employment on November 18, 1974. The court has not been advised whether or not he had opposition in the general election. On June 8, 1976, he again qualified to run for the same office and was required to take a leave of absence without pay through and including the August 1976 Democratic primary election. He won that election, did not have opposition in the general election, and was reinstated to his employment on September 8, 1976, preceding the November general election. Plaintiff's affidavit shows that as a result of these leaves of absence without pay, he was deprived of the following amounts of monetary compensation:

| 1972 | $2,810.00 |
|------|-----------|
| 1973 | 4,780.00 |
| 1976 | 3,750.00 |

Rule 58 has not been submitted for United States District Court for the District of Columbia judicial approval or to the Attorney General for him to have the opportunity to disapprove, all pursuant to Section Five. Plaintiff contends that Rule 58 is encompassed by Section Five and that its use must be enjoined until Section Five is complied with. Defendants assert that even the discussed expansive interpretation of Section Five does not reach what is purely a personnel policy of a local public board of education.

The facts as recited have been stipulated, cross motions for partial summary judgment have been filed, briefs have been submitted, and the issue of whether or not Rule 58 is subject to the procedures of Section Five is ready for decision by this district court of three judges.

This district court of three judges is required to resolve any dispute as to the coverage of Section Five or, said more directly, to determine "whether such changes have the *potential* for diluting the value of the Negro vote and are within the definitional terms of § 5." *Georgia v. United States,* 411 U.S. 526, 534, 93 S.Ct. 1702, 1707, 36 L.Ed.2d 472, 481 (1973). The ques-

tion of coverage to be decided by this court does not include the ultimate question required by Section Five to be presented to the District Court for the District of Columbia or the Attorney General, *i. e.*, whether or not the enactment in truth and fact has a discriminatory purpose or effect. *Perkins v. Matthews*, 400 U.S. 379, 383, 91 S.Ct. 431, 434, 27 L.Ed.2d 476, 482 (1971).

Section Five as judicially interpreted sweeps broadly over all phases of the electoral system so as to include even the statutory change of the date by which a declaration of candidacy must be filed, *Hadnott v. Amos*, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969); changes of the location of polling places and municipal annexations enlarging the number of voters. *Perkins, supra*; and the enlargement of the distance from the polling place within which campaigning is allowed, *Clayton v. North Carolina State Board of Elections*, 319 F.Supp. 915 (E.D.N.C.1970).

As the Supreme Court said in *Georgia v. United States, supra*, in deciding whether or not Georgia's 1972 legislative reapportionment plan was subject to § 5:

" . . . Section 5 is not concerned with a simple inventory of voting procedures, but rather with the reality of changed practices as they affect Negro voters.

\* \* \* \* \* \*

"The applicability of § 5 to election law changes such as those enacted by Georgia in its 1972 plan was all but conclusively established by the opinion of this court in *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1. The *Allen* opinion, dealing with four companion cases, held that § 5 applied to a broad range of voting law changes, and was constitutional as applied. With respect to the reach of § 5, we held that '[t]he legislative history on the whole supports the view that Congress intended to reach any state enactment which altered the election law of a covered State in even a minor way.' Id., at 566 [89 S.Ct. at 832, 22 L.Ed.2d 1]. . . .

"Had Congress disagreed with the interpretation of § 5 in *Allen*, it had ample opportunity to amend the statute. After extensive deliberations in 1970 on bills to extend the Voting Rights Act, during which the *Allen* case was repeatedly discussed, the Act was extended for five years, without any substantive modification of § 5. Pub.L. 91–285, 84 Stat. 314, 315. We can only conclude, then, that *Allen* correctly interpreted the congressional design when it held that "the Act gives a broad interpretation to the right to vote, recognizing that voting includes 'all action necessary to make a vote effective.'" 393 U.S. at 565–566 [89 S.Ct. at 832, 22 L.Ed.2d 1]." *Id.* at 531–533, 93 S.Ct. at 1706, 36 L.Ed.2d at 479–80.

■ Section Five, then, is more than a narrow guarantee against interference with the actual casting of a ballot. It is instead an all-encompassing protection against abridgement of an *effective* vote and to that end prohibits prior to required District of Columbia federal scrutiny, the enforcement of enactments of every nature or sort which touch the electorate's ability to have a choice as well as its right to choose. In short, it applies to modifications of the political process and all that that process entails, including the implementation of any policy implemented by a covered "State or political subdivision", 42 U.S.C.A. § 1973c, which restricts the ability of citizens to run for office.

■ Rule 58 of the Dougherty County Board of Education is such a modification of the political process. By imposing a financial loss on its employees who choose to become candidates, it makes it more difficult for them to participate in the democratic process and, consequently, restricts the field from which the voters may select their representatives. As in *Allen, supra*, and *Hardnott, supra*, it is an "increased barrier" for a candidate and for that reason it is a "procedure with respect to voting" that is subject to the requirements of Section Five.

To paraphrase *Georgia v. United States, supra*, the applicability of Section 5 to rules

and regulations which place restrictions upon the opportunity of black citizens to offer for elective office was all but conclusively established by *Allen, supra.*

Rule 58 being subject to the requirements of Section Five and those requirements having not been met, the enforcement of Rule 58 must be enjoined by this court.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the defendants, their agents, officers, servants, employees and attorneys, and all persons in active concert with them who receive actual notice of this order by personal service or otherwise, are hereby enjoined from further using and enforcing in any respect Rule 58 of the Dougherty County Board of Education.

This three-judge court having finally resolved the issue properly before it, does hereby dissolve itself and remand the case to the originating judge for such other and further proceedings consistent with this opinion as may be required, including determination of an appropriate remedy.