**RHODE ISLAND MINORITY CAUCUS, INC., et al., Plaintiffs, Appellants,**

v.

**Leo BARONIAN et al., Defendants, Appellees.**

No. 78–1303.

United States Court of Appeals, First Circuit.

Argued Nov. 6, 1978.

Decided Jan. 11, 1979.

Lynette Labinger, Providence, R. I., for appellants.

Gerald G. Norigian, Providence, R. I., with whom John Rotondi, Jr., and Joseph A. Rotella, Providence, R. I., were on brief, for appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

This is an appeal from the district court's denial of a motion for a preliminary injunction. Plaintiff-appellants are the Rhode Island Minority Caucus, Inc., (the Caucus), a nonpartisan political organization whose primary purpose is to encourage minority group participation in the political process, four named minority individuals who are members of the Caucus, and a purported class of similarly situated persons. Defendants are the members of the Board of Canvassers of the City of Providence, Rhode Island (the Board). In the complaint it is alleged, *inter alia*, that defendants, by establishing procedures that, in effect, excluded the appointment of the named plaintiffs and other persons nominated by the Caucus as voter registrars for the 1978 election year, violated the plaintiffs' rights under the first and fourteenth amendments to equal protection and freedom of political association. Plaintiffs seek injunctive relief restraining the Board from refusing to appoint voter registrars on the basis of race or political affiliation and requiring it to promulgate rules to govern the future selection of registrars. The district court, after a hearing, denied preliminary injunctive relief, principally on the ground that

plaintiffs had failed to establish their probability of success on the merits.

■ We affirm the judgment of the district court on the ground that the severity of the harm alleged in the request for interim relief was dissipated with the passage of the 1978 general election. Although deputy registrars technically serve throughout the year, plaintiffs concede that the important role played by the registrars occurs prior to each general election. In light of that fact, plaintiffs will suffer no irreparable harm pending trial on the merits in the absence of injunctive relief. *See Essex County Preservation Ass'n v. Campbell*, 1 Cir., 1976, 536 F.2d 956, 962; *Anheuser-Busch, Inc. v. Teamsters Local 633*, 1 Cir., 1975, 511 F.2d 1097, 1099–1100, *cert. denied*, 423 U.S. 875, 96 S.Ct. 148, 46 L.Ed.2d 109; *Citizens for a Better Environment, Inc. v. Nassau County*, 2 Cir., 1973, 488 F.2d 1353, 1361–63; *Tyree v. Fitzpatrick*, 1 Cir., 1971, 445 F.2d 627, 628–29; *McKenna v. Reilly*, D.R.I., 1976, 419 F.Supp. 1179, 1187–88. We reject, as unfounded, plaintiffs' fear that a final decision will not be rendered for "one or two years." We have every confidence that the district court and, if necessary, this court, will act with the expedition necessary fully to protect plaintiffs' asserted rights. If we prove to be mistaken, plaintiffs may reapply, as we do not agree that plaintiffs' probability of success is insubstantial.

■ We note, incidentally, that by pursuing this appeal from the denial of interim relief, plaintiffs have delayed trial on the merits for over six months. As plaintiffs concede, the record is incomplete with respect to certain aspects of their claims, with the result that, at best, they are presenting us with a piecemeal appeal, a procedure disfavored except in extraordinary circumstances. Particularly do we dislike preliminary consideration of constitutional claims, which may be complex and troublesome. *See Tyree v. Fitzpatrick, ante.*

While we affirm the district court for the reason stated above, for the benefit of the court and the parties during the plenary hearing we note certain aspects of the court's analysis which, at this early stage,

appear questionable. A brief statement is needed to place our comments in context. Because the court, in its oral ruling on plaintiffs' motion, made few findings of fact, we rely in large part on plaintiffs' allegations.

In furtherance of its goal of increasing registration of minority voters, the Caucus, in 1976, requested the Board to appoint as registrars individuals sponsored by it. This request was granted and six Caucus nominees were appointed, including some of the named plaintiffs. Appointments are on an annual basis, in a number determined sufficient by the Board. Registrars serve without compensation, and their sole function is to register eligible voters. There is no suggestion that the position involves the making of policy, or requires a close, confidential relationship with the Board. *Cf. Elrod v. Burns*, 1976, 427 U.S. 347, 367–68, 96 S.Ct. 2673, 49 L.Ed.2d 547. Apart from the conditions imposed by the Board in 1978 and contested here, the only qualifications required for appointment are that an applicant be literate, a registered voter and willing to take an oath of office. It is not claimed that any of the named plaintiffs fail to meet these requirements and, in fact, several of them had, prior to 1978, served as registrars, apparently in a satisfactory manner.

In hopes of capitalizing on voter interest enhanced by the forthcoming general election, the Caucus, in early 1978, again requested the Board to appoint as registrars individuals whom it would nominate. This request was denied on the ground that the Board had concluded it unnecessary to appoint any registrars for the 1978 election year. Caucus members then approached the Providence City Council and obtained a nonbinding resolution which urged the Board, in order to facilitate greater voter participation, to appoint twenty-five new registrars. The resolution recommended that the positions be filled by permitting the Chairs of four organizations—the local Democratic and Republican parties, the League of Women Voters (the League) and the Caucus—each to sponsor five registrars,

with the remaining five to be selected by the Board. In response to this resolution, the Board, in April 1978, announced that thirty new registrars would be appointed, with the Chairs of the two political parties and the League each selecting ten.

It appears that all of the individuals so selected were in fact accepted by the Board. The Board thus refused to allow the Caucus to nominate registrars, and also refused to appoint the individual plaintiffs because of their lack of sponsorship by any of the three selected organizations. The Caucus protested to the Board, pointing out that the action appeared racially discriminatory because it had deprived the only organization among the four named in the resolution with predominantly minority membership of the opportunity to nominate registrars, and because no other minority organization had been selected in its place. In response, the Board asserted that it had chosen the fairest way in insure representation of all segments of the community.

Prior to 1978, it appears that the Board had deputized registrars on a first-come basis, without requiring organizational sponsorship. Of the three organizations selected in 1978, only the League had requested the opportunity to nominate registrars. The record indicates that the League, in selecting its ten nominees, explicitly required membership in its organization. It is unclear whether the Democratic or Republican parties required party membership. However, the court assumed that membership or affiliation was, as a practical matter, likely demanded by those organizations as well. There is a factual dispute as to whether the Board required the Chairs of the three selected organizations to nominate at least some minority individuals as a condition for the privilege of sponsoring registrars. It is undisputed, however, that the selection process ultimately resulted in the appointment of fourteen women and ten members of minority groups out of the thirty.

Plaintiffs raise two constitutional challenges to the Board's 1978 selection procedures. First, that by denying the Caucus the opportunity to nominate registrars and by refusing to appoint the named plaintiffs, each of whom is a member of a racial or ethnic minority group, to that position, the Board discriminated against the Caucus on the basis of its racial composition and against the individual plaintiffs on the basis of their race. Second, it is alleged that by delegating the power of nomination to the three selected organizations, the Board effectively conditioned appointment as a registrar on membership in or affiliation with those organizations, thereby abridging plaintiffs' freedom of association, or more precisely, nonassociation.

In finding a lack of probability of success on these claims, the court first correctly noted that the Board bears the responsibility of selecting a sufficient number of willing, able and qualified registrars who will perform their duties in accordance with federal and state election laws, but also that the Board, in fulfilling its responsibility, may not use selection procedures which violate constitutional safeguards. Turning, then, to plaintiffs' equal protection claim, the court concluded that the plaintiffs had failed to produce any evidence of racial discrimination in light of the undisputed facts that there was no showing that the three selected organizations practiced racial discrimination, and that the procedure used by the Board had resulted in the appointment of minority individuals to one-third of the positions. These facts, the court believed, negated plaintiffs' allegations of injury and thus it apparently deemed it unnecessary to determine whether the Board's action was racially motivated.

▮▮▮ We believe that the court's analysis misconstrued the thrust of plaintiffs' allegations and the applicable law. That the selection process resulted ultimately in "balanced" or "fair" representation of the racial and ethnic groups in the Providence area, while a factor relevant in determining the Board's intent, *see, e. g., Furnco Constr. Co. v. Waters,* —— U.S. ——, ——, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 1977, 429 U.S. 252, 266, 97 S.Ct.

555, 50 L.Ed.2d 450, may not, in and of itself, be dispositive of the claim that these plaintiffs were victims of racial discrimination. Each named plaintiff, and the organization, enjoy an individual right to be free from invidious racial discrimination. *See Regents of University of Calif. v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); *Shelley v. Kraemer,* 1948, 334 U.S. 1, 22, 68 S.Ct. 836, 92 L.Ed. 1161. A racially balanced group of registrars does not immunize the Board from liability for specific acts of discrimination against these individual plaintiffs. *See Furnco Constr. Co.,* ante, —— U.S. at ——, 98 S.Ct. 2943. Nor is the fact that the three selected organizations may be free from internal racial discrimination sufficient to absolve the Board from its duty not to discriminate against an organization because of the race of its members or against a person on the basis of "his race or the race of his companions." *Adickes v. S. H. Kress & Co.,* 1970, 398 U.S. 144, 151–52, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142, *see Langford v. City of Texarkana,* 8 Cir., 1973, 478 F.2d 262, 266–67. *Cf. Hadnott v. Amos,* 1969, 394 U.S. 358, 361–64, 89 S.Ct. 1101, 22 L.Ed.2d 336.

■ Finally, we note that while there is no right, in the abstract, to be appointed to a public office such as that of voter registrar, and similarly no right to be a sponsoring organization, the plaintiffs do have the right to be considered for such positions unhampered by invidiously discriminatory disqualifications. The privilege of holding public employment or office may not be denied by the state on the basis of distinctions which violate federal constitutional guarantees. *See Turner v. Fouche,* 1970, 396 U.S. 346, 362–63, 90 S.Ct. 532, 24 L.Ed.2d 567; *see also Cole v. Richardson,* 1972, 405 U.S. 676, 680, 92 S.Ct. 1332, 31 L.Ed.2d 593; *Hadnott v. Amos,* ante; *Kahn v. Secretary of H.E.W.,* D.Mass. 1971, 53 F.R.D. 241, 246–47.

■ Thus, we believe that plaintiffs, individually and as an organization, have alleged injury sufficient to establish an equal protection violation, provided that at trial they can prove that racial animus played a part in the Board's decision to exclude them. *Village of Arlington Heights,* ante. Defendants, however, would then have the opportunity to defend by showing that the exclusion satisfies the requirements of strict judicial scrutiny, *Bakke,* ante, 438 U.S. at 265, 98 S.Ct. 2733; *In re Griffiths,* 1973, 413 U.S. 717, 721–22, 93 S.Ct. 2851, 37 L.Ed.2d 910, or the lack of a causal nexus between the improper animus and the decision. *See Village of Arlington Heights,* ante, 429 U.S. at 270–71 n.21, 97 S.Ct. 555.

■ As the state may not intentionally use an injurious racial classification absent compelling justification, so, too, it may not abridge fundamental first amendment rights of speech and association without establishing that such an infringement is necessary to achieve a vital state interest. *See, e. g., Elrod v. Burns,* ante, 427 U.S. at 362–63, 96 S.Ct. 2673; *NAACP v. Button,* 1963, 371 U.S. 415, 438–39, 83 S.Ct. 328, 9 L.Ed.2d 405; *McKenna v. Reilly,* ante. Plaintiffs allege that the Board has impermissibly burdened their right of association by conditioning appointment as a voter registrar upon membership in or affiliation with one of the three selected organizations. In rejecting this claim, the district court first noted that political parties play a vital role in the election process and then observed that it would be "a strange circumstance if one were disqualified from being a registrar simply because they [sic] were members of a political party." While we acknowledge the important role that the major political parties traditionally have played in many facets of the nation's political process, we do not believe that the court's observation fully meets plaintiffs' claim. Plaintiffs do not argue that Democrats, Republicans or members of the League should be disqualified from serving as registrars. Rather, they argue that they, themselves, should not be disqualified simply because they choose not to associate with those groups. Further, they argue that whatever the importance, generally, of political parties to this nation's electoral

processes, it is not necessary to the process of voter registration to condition service as a registrar upon membership in either of the major political parties, the League, or any other organization.

So viewed, but without prejudging the issue, it appears that plaintiffs raise a substantial first amendment question. *See, e. g., Abood v. Detroit Bd. of Educ.*, 1977, 431 U.S. 209, 232–36, 97 S.Ct. 1782, 52 L.Ed.2d 261; *Elrod v. Burns*, ante, 427 U.S. at 355–73, 96 S.Ct. 2673; *Buckley v. Valeo*, 1976, 424 U.S. 1, 90–108, 96 S.Ct. 612, 46 L.Ed.2d 659; *American Party v. White*, 1974, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744; *see also Cousins v. Wigoda*, 1975, 419 U.S. 477, 487–89, 95 S.Ct. 541, 42 L.Ed.2d 595; *Kusper v. Pontikes*, 1973, 414 U.S. 51, 58–59, 94 S.Ct. 303, 38 L.Ed.2d 260; *NAACP v. Button*, ante. Presently, the record is unclear as to whether membership in either the Democratic or Republican parties was, or was thought to be, a requirement for nomination as registrar by those organizations, and what purpose, if any, the Board intended by such requirement. These factual issues and others should be resolved and assessed by the district court, in light of the authorities cited, in determining the extent to which plaintiffs' associational rights have been abridged, the burden, if any, the Board must bear in justifying that abridgment, and whether in fact the Board can meet that burden.

A final observation seems warranted. In their prayer for relief, plaintiffs seek only to have the Board enjoined from refusing to appoint registrars on the basis of race, political affiliation or the lack thereof, and required to formulate new, but unspecified, procedures for selecting registrars. So stated, we have no difficulty. There is some suggestion in the record and in their brief, however, that plaintiffs seek to require the Board to permit the Caucus to nominate a certain number of registrars. Without definitely resolving the question, we are initially troubled that such relief, if that indeed is what plaintiffs want, would be both inconsistent with their associational claim, and more importantly, may improperly impact the first amendment and equal protection rights of others who seek appointment as registrars. *Cf. Bakke*, ante, 438 U.S. at 298–301, 313–321, 98 S.Ct. at 2753–2754, 2761–2764 (Powell, J.); *Elrod*, ante.

*The judgment of the district court denying the plaintiffs' motion for a preliminary injunction is affirmed.*