Joe TISDALE, Veronica Cooper, John Wesley Adamson, Lizzie R. Brown, Joseph Gordon, Jacques C. Gordon, Arthur Tisdale, Jr. and B.J. Gordon, Jr., Plaintiffs,

v.

Robert J. SHEHEEN, Speaker of the House of Representatives in his Official Capacity and as Representative of the Membership of the South Carolina House of Representatives, Defendant.

No. 3:91–0807–0.

United States District Court,
D. South Carolina,
Columbia Division.

May 29, 1991.
Order July 5, 1991.

Edwin E. Evans, Joseph D. Shine, Chief Deputy Attys. Gen., and Treva G. Ashworth, Sr. Asst. Atty. Gen., Columbia, S.C., for defendant.

Helen Tyler McFadden, Kingstree, S.C., for plaintiffs.

Before WILKINS, Circuit Judge and PERRY and JOSEPH F. ANDERSON, Jr., District Judges.

### ORDER

Former state legislator Benjamin J. Gordon, Jr. and seven individuals residing in Gordon's state house district seek a declaration that House Rule 3.12 adopted by the South Carolina House of Representatives, under which Gordon was suspended upon being indicted, and under which his seat was later declared vacant upon his conviction of federal criminal charges, was implemented without necessary preclearance pursuant to section 5 of the Voting Rights Act, 42 U.S.C.A. § 1973c (West 1981). Upon notification by the district court that this action had been filed, the Chief Judge of the United States Court of Appeals for the Fourth Circuit empaneled a three-judge court composed of Circuit Judge William W. Wilkins, Jr. and District Judges Matthew J. Perry, Jr. and Joseph F. Anderson, Jr. in accordance with 28 U.S.C.A. § 2284 (West 1978 & Supp.1991). We find that House Rule 3.12 constitutes a change in a standard, practice, or procedure with respect to voting that must be precleared prior to implementation.

### I.

The South Carolina House of Representatives first adopted House Rule 3.12 in 1982, and has consistently readopted it each succeeding legislative session. The rule provides:

In addition to the actions permitted by Section 8–13–250 of the 1976 Code, any member of the House who, while serving as a member of the House, is indicted in a General Sessions Court or a Federal Court for a crime that is a felony, a crime that involves moral turpitude, a crime that has a sentence of two or more years, or a crime that violates election laws, shall be suspended by the Speaker of the House immediately. This suspension will remain in effect until said House member is acquitted or convicted. In case of conviction, the office shall be declared vacant.

If an election for members of the House intervenes between the time of the suspension and final conclusion of the indictment, the Speaker shall again suspend him at the beginning of the session. The suspended House member will not, at any time, participate in the business of the House.

H.R. Res. 3001, 109th S.C. Gen. Ass'y., 1st Sess., 1991 South Carolina Legislative Manual 221.

Gordon was elected to the South Carolina House of Representatives in the early

1970's and had served continuously in this capacity until September 1990 when he was suspended pursuant to House Rule 3.12 following indictment by a federal grand jury. Gordon was re-elected to the House in November 1990 and again suspended under House Rule 3.12. A jury convicted Gordon of conspiracy to commit extortion and extortion under color of official right, 18 U.S.C.A. § 1951 (West 1984), on March 8, 1991. Acting under authority of House Rule 3.12, the Speaker of the House declared Gordon's seat vacant on March 11, 1991.

Gordon and seven registered voters from South Carolina House District 101 filed this action on March 22, 1991 against the Speaker of the South Carolina House of Representatives, Robert J. Sheheen, in his individual and representative capacity.[1] Plaintiffs allege that the implementation of House Rule 3.12 without preclearance constituted a violation of section 5 of the Voting Rights Act. Plaintiffs also contend that House Rule 3.12 violates article III, section 12 of the South Carolina Constitution, which provides that a representative may be expelled from the House upon a vote of two-thirds of its members and that a representative may not be expelled more than once for the same reason. Gordon seeks reinstatement to his House seat and a stay of a special election scheduled to fill that vacancy.

■ House Rule 3.12 was originally adopted in 1982 as a method to ensure public confidence in the legislature following the conviction of one of its members on charges of vote-buying. This forced a vote among the members over whether to expel the individual. It is undisputed that the rule had no effect on any minority legisla- tor when it was adopted and that it has been applied in a consistently non-discriminatory manner. Defendant claims that because the rule was not motivated by a discriminatory intent and because it has not had a discriminatory effect, House Rule 3.12 is not subject to the preclearance requirement. However, established law is clear that this court may not concern itself with whether the rule actually has a discriminatory purpose or effect. *NAACP v. Hampton County Election Comm'n*, 470 U.S. 166, 181, 105 S.Ct. 1128, 1137, 84 L.Ed.2d 124 (1985). Nor may we consider the appropriateness of the rule or any positive effects it may have produced. The scope of our inquiry does not extend to whether this is a good rule, but is limited to only whether the Voting Rights Act requires its preclearance.

## II.

■ Congress enacted the Voting Rights Act to combat "nearly a century of systematic resistance to the Fifteenth Amendment." *South Carolina v. Katzenbach*, 383 U.S. 301, 328, 86 S.Ct. 803, 818, 15 L.Ed.2d 769 (1966). Prior to implementation of a change in "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964," section 5 of the Act requires[2] preclearance by either a declaratory judgment of the United States District Court for the District of Columbia that the change "will not have the effect of denying or abridging the right to vote on account of race or color" or by submission to the Attorney General.[3] 42 U.S.C.A. § 1973c. House Rule 3.12 was not precleared prior

---

1. Plaintiffs originally brought suit against four other individuals holding offices with political parties in Williamsburg County, South Carolina or various election commissions. These individuals have been dismissed by consent orders under which they agreed to be bound by and comply with any order of this court.

2. The preclearance requirement applies to a state or political subdivision covered by section 5 of the Voting Rights Act. 42 U.S.C.A. § 1973c. South Carolina is a covered jurisdiction. *See* 28 C.F.R. pt. 51 app. (1990).

3. A change submitted to the Attorney General may be implemented unless the Attorney General interposes an objection to the change within 60 days. 42 U.S.C.A. § 1973c. Upon a showing of good cause by the party seeking preclearance, the Attorney General may affirmatively indicate that he will interpose no objection to the proposed change in order to facilitate expedited approval. *Id.*

to implementation; therefore, the issue before this court is whether the rule constitutes a change in a standard, practice, or procedure with respect to voting.

### A.

Congress did not define or otherwise clarify what constitutes a standard, practice, or procedure with respect to voting. However, regulations promulgated by the Attorney General interpret the scope of the section 5 preclearance requirement as including

> [a]ny change affecting voting, even though it appears to be minor or indirect, returns to a prior practice or procedure, ostensibly expands voting rights, or is designed to remove the elements that caused objection by the Attorney General to a prior submitted change.

28 C.F.R. § 51.12 (1990). Congress did broadly define the term "voting" as including

> all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this subchapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

42 U.S.C.A. § 1973*l*(c)(1) (West 1981).

In attempting to give meaning to the phrase, the Supreme Court has looked to "the history and purpose of the Act," *Dougherty County, Ga., Bd. of Educ. v. White*, 439 U.S. 32, 37, 99 S.Ct. 368, 371, 58 L.Ed.2d 269 (1978), and concluded that, in enacting section 5, "Congress intended to reach any state enactment which altered the election law ... in even a minor way," *Allen v. State Bd. of Elections*, 393 U.S. 544, 566, 89 S.Ct. 817, 832, 22 L.Ed.2d 1 (1969). The Court has found the following to be examples of a standard, practice, or procedure affecting voting: changing the locations of polling places, *Perkins v. Matthews*, 400 U.S. 379, 91 S.Ct. 431, 27

L.Ed.2d 476 (1971); changing from district to at-large elections, *Allen*, 393 U.S. 544, 89 S.Ct. 817; annexing inhabited land, *City of Rome v. United States*, 446 U.S. 156, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980); reapportioning legislative districts, *United Jewish Orgs. of Williamsburgh, Inc. v. Carey*, 430 U.S. 144, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977); requiring county employees to take an unpaid leave of absence during their candidacy for or service in elective office, *Dougherty County*, 439 U.S. 32, 99 S.Ct. 368; and requiring independent candidates to decide whether to run at the same time party candidates must, *Hadnott v. Amos*, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969). *See also* 28 C.F.R. § 51.13 (1990). Whether an internal disciplinary rule of a state legislative body is a standard, practice, or procedure with respect to voting within the Voting Rights Act appears to be a case of first impression.

Gordon relies upon a regulation, promulgated by the Attorney General, that provides examples of types of changes that are subject to the preclearance requirement. The regulation provides that "any change *affecting the eligibility of persons to* become or remain candidates, to obtain a position on the ballot in primary or general elections, or to become or *remain holders of elective offices*" is a standard, practice, or procedure affecting voting. 28 C.F.R. § 51.13(g) (1990) (emphasis added). Gordon contends that House Rule 3.12 imposes additional requirements—lack of indictment or conviction—upon his eligibility to remain a holder of his office.

■ The legislative history indicates that the Voting Rights Act was intended to facilitate the enfranchisement of minority voters and focused on voting and the electoral process. Nevertheless, House Rule 3.12 falls squarely within the plain wording of the emphasized portion of subsection (g) of the Department of Justice regulation because it affects the eligibility of representatives to remain holders of their elected offices. The Attorney General's construction of the Voting Rights Act must be given considerable deference by this court, "especially in light of the extensive role

played by the Attorney General in drafting the statute and explaining its operation to Congress." *NAACP v. Hampton County Election Comm'n,* 470 U.S. at 179 & n. 29, 105 S.Ct. at 1136 & n. 29; *accord Dougherty County,* 439 U.S. at 39–40, 99 S.Ct. at 372–73.[4] Because we cannot say that the Attorney General's regulation is an unreasonable interpretation of section 5 of the Voting Rights Act, *see Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we find that House Rule 3.12 is a standard, practice, or procedure affecting voting.

### B.

In order for the section 5 preclearance requirement to apply, a given rule must also be "different from that in force or effect on November 1, 1964." 42 U.S.C.A. § 1973c. Defendant concedes that the portion of House Rule 3.12 requiring suspension of a member upon his indictment is a change. Defendant argues, however, that the provision requiring that a member's seat shall be declared vacant upon the member's conviction does not constitute a change.

The South Carolina Constitution provides that a representative may be expelled from the House upon a vote of two-thirds of its members. S.C. Const. art. III, § 12. More than two-thirds of the members of the House voted to adopt House Rule 3.12. Defendant claims that the rule merely implements the House members' expulsion power under the state constitution and argues that it can hardly be a change within the meaning of the Voting Rights Act for House members to adopt a rule doing automatically that which they are authorized to do at any time for any legitimate reason on a case-by-case basis.

While this argument has considerable merit, we conclude that this provision of the House Rule does constitute a change. House Rule 3.12 operates automatically

and, therefore, forecloses the opportunity the membership possesses under the constitutional provisions to consider the individual circumstances leading to the expulsion vote. House Rule 3.12 establishes a practice or procedure unlike the prior individual determination. While the House Rule undoubtedly offers desirable advantages, nevertheless, it is different from that in effect prior to November 1, 1964.

Defendant also argues that House Rule 3.12 is not a change because under South Carolina law Gordon's seat automatically became vacant upon his conviction apart from the operation of the rule. The South Carolina Constitution provides that "[n]o person shall be eligible for a seat in the ... House of Representatives who, at the time of his election, is not a duly qualified elector." S.C. Const. art. III, § 7. Individuals who are convicted of a felony are disqualified as electors and thus ineligible to seek elected office in the South Carolina Legislature "unless the disqualification [is] removed by service of the sentence" or pardon. S.C.Code Ann. § 7-5-120(4)(b) (Law.Co-op.Supp.1990). Defendant argues that upon Gordon's conviction, he became disqualified as an elector and, therefore, disqualified to hold office since, they contend, qualification is a continuing requirement. While we recognize the appeal of this argument, we are nonetheless bound to apply the plain wording of the South Carolina Constitution as written. Article III, section 7 inescapably applies only to the eligibility of an individual "at the time of his election" and imposes no continuing eligibility requirement on officeholders. Whether a convicted felon should continue to hold public office is not before us, only the issue of whether the South Carolina Constitution speaks to that situation. It does not, and we may not rewrite it or strain its specific language in order to reach any particular result. Finally, the adoption of the House Rule 3.12 by the House of Representatives is strong evidence that this constitutional provision was

---

4. The Department of Justice submitted an *amicus curiae* brief in which it expressed its opinion that House Rule 3.12 is a change in a standard, practice, or procedure with respect to voting

and is encompassed by section 51.13(g). Consequently, the Department of Justice maintains that preclearance is required.

not viewed as operating to automatically expel a convicted felon as defendant now contends.

## C.

Defendant contends that if House Rule 3.12 is a standard, practice, or procedure affecting voting merely because the rule prevents an elected representative from serving through the completion of his elected term of office when the House removes him for misconduct, then each vote by the South Carolina House, or any other elected body, disciplining its members for misconduct by removing them from the membership would also require preclearance. This contention lacks merit because the state constitution empowers the House to remove a representative upon a vote of two-thirds of its members and because individual disciplinary decisions of the legislature do not constitute a practice or procedure. *See White v. Dougherty County Bd. of Educ.*, 579 F.Supp. 1480 (M.D.Ga.1984), *aff'd*, 470 U.S. 1067, 105 S.Ct. 1824, 85 L.Ed.2d 125 (1985) (individual personnel decisions do not constitute a practice within meaning of Voting Rights Act). We are not faced with an individual disciplinary decision but with House Rule 3.12 as it applies to all members of the House.

## III.

Having concluded that House Rule 3.12 is a standard, practice, or procedure with respect to voting and, therefore, may not be implemented without preclearance, we must turn our attention to the appropriate relief. Section 5 requires that the state must not implement a change affecting voting "unless and until" it has been precleared. 42 U.S.C.A. § 1973c. Failure to obtain preclearance "renders the change unenforceable." *Hathorn v. Lovorn*, 457 U.S. 255, 269, 102 S.Ct. 2421, 2430, 72 L.Ed.2d 824 (1982). Therefore, we enjoin further application of House Rule 3.12 insofar as it permits the Speaker of the House to suspend representatives or declare their seats vacant. Additionally, we enjoin any future special election scheduled to fill a seat declared vacant pursuant

to the rule. This injunction will remain in effect until such time as the state demonstrates to the satisfaction of this court that the rule has received preclearance.

With respect to Gordon's request for reinstatement, the Department of Justice suggests in its *amicus curiae* brief that it would be appropriate to afford the state an opportunity to seek preclearance and that this court should consider the propriety of Gordon's request for reinstatement only if the state fails to pursue preclearance or if House Rule 3.12 fails to gain federal approval. *See Berry v. Doles*, 438 U.S. 190, 98 S.Ct. 2692, 57 L.Ed.2d 693 (1978). Additionally, in its brief the Department of Justice represents to the court that it is prepared to give expedited consideration to a submission if one is made by the state. *See* 28 C.F.R. § 51.34 (1990). While we may not consider whether this rule has been applied in a discriminatory manner in deciding whether preclearance is required, this factor is significant in fashioning an appropriate remedy. We conclude that the circumstances surrounding the adoption and implementation of House Rule 3.12 are within the class of situations for which the procedure suggested by the Department of Justice is appropriate. Accordingly, we allow the state to seek, within ten days from the filing of this order, preclearance of House Rule 3.12 on an expedited basis. If the rule is approved by the Attorney General, this matter is ended. In the event the state fails to pursue preclearance, or if federal approval is not obtained, Gordon is free to renew his request for appropriate relief.

## IV.

Gordon also contends that his suspensions and expulsion violate various provisions of the South Carolina Constitution. Defendant, however, correctly argues that, insofar as Gordon seeks relief under state law, a determination by this court is foreclosed by the eleventh amendment. We agree that this court may not entertain a suit against a non-consenting state official premised upon a violation of state law.

The eleventh amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. This amendment prohibits suits brought by citizens against their own state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). States may not be sued "in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985).

 The eleventh amendment also "bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). An exception to the eleventh amendment prohibition to suits against state officials exists for suits "challenging the constitutionality of a state official's action." *Id.* at 102, 104 S.Ct. at 909; *accord Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This exception, however, is inapplicable to suits that challenge a state official's actions on the basis of state law. *Pennhurst,* 465 U.S. at 106, 104 S.Ct. at 911. Federal courts are not empowered to "instruct[ ] state officials on how to conform their conduct to state law." *Id.* We, therefore, decline to entertain Gordon's request for injunctive relief against a nonconsenting state official premised upon an alleged violation of the South Carolina Constitution. The appropriate forum for resolution of these claims is the state court.

## V.

For the foregoing reasons the court finds that Gordon's allegations concerning violations of state law may not be addressed by this court and are dismissed without prejudice. The court concludes that no material issues of fact are present and plaintiffs are entitled as a matter of law to a declaration that House Rule 3.12 constitutes a change in a standard, practice, or procedure with respect to voting that may not be implemented without preclearance pursuant to the Voting Rights Act. Further implementation of House Rule 3.12 and any future special election for the purpose of filling a seat vacated by operation of the rule are enjoined until such time as the state satisfies the court that it has obtained preclearance. Reinstatement of Gordon to the House of Representatives is denied. If the State of South Carolina seeks preclearance within ten days of the filing of this order and if federal approval is obtained, this matter is ended. If the state elects not to seek preclearance or if approval is not obtained, Gordon may renew his request for appropriate relief.

IT IS SO ORDERED.

## ORDER

By order entered on May 31, 1991, this court concluded that House Rule 3.12 adopted by the South Carolina House of Representatives constituted a standard, practice or procedure with respect to voting which could not be implemented without preclearance pursuant to § 5 of the Voting Rights Act, 42 U.S.C.A. § 1973c (West 1981). The court enjoined any future special election scheduled to fill a seat declared vacant pursuant to House Rule 3.12 "until such time as the state demonstrates to the satisfaction of this court that the rule has received preclearance." May 31, 1991 order at 11–12.

Special elections to fill seats vacated under House Rule 3.12 have been scheduled for July 9, 1991. Plaintiffs have moved for an order holding defendant in contempt and permanently enjoining the July 9, 1991 elections. Subsequent to the filing of this motion, defendant advised the court that House Rule 3.12 has received preclearance. Defendant also moved for an order lifting the injunction.

The rule in question having been duly precleared, no reason exists to delay the July 9 elections. Accordingly, plaintiffs'

motion is denied. The injunction entered on May 31, 1991, is hereby dissolved.

ENTERED at the direction of Circuit Judge William W. Wilkins, Jr. and District Judges Matthew J. Perry and Joseph F. Anderson, Jr.

