**INSTITUTE FOR WILDLIFE PROTECTION; et al., Plaintiffs—Appellants,**

v.

**Gale NORTON, in her official capacity as Director of the United States Fish and Wildlife Service, an agency of the Dept. of the Interior, Defendant—Appellee.**

No. 04–35912.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 21, 2005.

Filed March 3, 2006.

Don Webb, Eugene, OR, for Plaintiffs–Appellants.

Lane McFadden, Esq., Bridget McNeil, U.S. Department of Justice Environment & Natural Resources Division, Washington, DC, for Defendant–Appellee.

Before: B. FLETCHER and McKEOWN, Circuit Judges, and KING,* Senior Judge.

## MEMORANDUM **

Plaintiffs–Appellants Institute for Wildlife Protection and Dr. Steven G. Herman (Appellants) appeal the district court's grant of summary judgment to Defendants–Appellees Gale Norton, in her offi-

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

cial capacity as Secretary of the Interior, and Steve Williams, in his official capacity as Director of the United States Fish and Wildlife Service (FWS). We have jurisdiction over this appeal under 28 U.S.C. § 1291. We reverse the district court's grant of summary judgment and remand for FWS to revisit its 90–day Finding on a Petition to List the Western Sage Grouse (the "90–day Finding").

## STANDARD OF REVIEW

We review de novo the district court's decision on cross motions for summary judgment. *Arakaki v. Hawaii,* 314 F.3d 1091, 1094 (9th Cir.2002). In so doing, we must "view the evidence in the light most favorable to the nonmoving party," *Nat'l Ass'n of Home Builders v. Norton,* 340 F.3d 835, 840 (9th Cir.2003), to determine whether there are any issues of material fact and whether the district court correctly applied the substantive law. *Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 922 (9th Cir.2004). Section 706 of the Administrative Procedure Act (APA) governs our review and requires us to set aside an agency action if we determine that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *High Sierra Hikers Ass'n v. Blackwell,* 390 F.3d 630, 638 (9th Cir.2004) (quoting 5 U.S.C. § 706(2)(A))(internal quotation marks omitted). We presume that the agency action is valid, while simultaneously undertaking a "thorough, probing, in-depth re-

view." *Nat'l Ass'n of Home Builders,* 340 F.3d at 841.

## DISCUSSION

The question before this panel is whether FWS's 90–day Finding, in which the agency decided that it no longer recognizes the western sage grouse as a subspecies, is arbitrary and capricious. For a species to surmount the hurdle of the 90–day Finding on its path to listing under the Endangered Species Act, FWS must find that the listing petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." Substantial information is "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b) (2005).

■ In the 90–day Finding, FWS reversed course, deciding that the western subspecies of the greater sage grouse is not a valid classification, rejecting this taxonomic distinction after decades of recognition. The agency's 90–day Finding and the accompanying record inadequately explain this change of course; the agency's decision is therefore arbitrary and capricious.[1] We reverse the district court's grant of summary judgment and remand to FWS to revisit its 90–day Finding on the western sage grouse, providing an explanation for its changed course that satisfies the standard set forth in *Atchison,*

---

1. A settled course of behavior embodies the agency's informed judgment that, by pursuing that course, it will carry out the policies committed to it by Congress.

There is, then, at least a presumption that those policies will be carried out best if the settled rule is adhered to. From this presumption flows the agency's duty to explain its departure from prior norms.... Whatever the ground for the departure from prior norms, however, it must be clearly set

forth so that the reviewing court may understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate.

*Atchison, Topeka & Santa Fe Railway Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973); *see Seldovia Native Ass'n v. Lujan,* 904 F.2d 1335, 1345 (9th Cir.1990) (affording less deference to an agency's "most recent expression" when the agency has reversed a policy).

*Topeka & Santa Fe Railway Company.* Fundamentally, our concern is that FWS has not explained the principles it has employed to determine the validity of a subspecies classification, and the principles it has employed have been undermined by independent experts and FWS's own policies and previous decisions. Therefore, we offer specific comments for the agency's consideration in its re-visitation of the Finding.

First, to the extent that the agency provides data to support revoking its recognition of the western subspecies, it relies on data that was largely available and employed in its 2001 12–month Finding on the Columbia Basin Distinct Population Segment (DPS) of the subspecies, which continued to acknowledge the existence of a western subspecies. *Compare 90–day Finding on a Petition To List the Western Sage Grouse,* 68 Fed.Reg. 6,500 (Feb. 7, 2003), *with 12–month Finding for a Petition To List the Washington Population of the Western Sage Grouse,* 66 Fed.Reg. 22,-984 (May 7, 2001). The 2002 Johnsgard study and the in-press Benedict study are the only new scientific research cited in the 90–day Finding that support a change of position from the 12–month Finding two years earlier.

Even these studies do not provide new information to support the agency's change of course. FWS cites the Benedict study for its conclusion that there is no genetic evidence to support the subspecies classification. *90–day Finding on a Petition To List the Western Sage Grouse,* 68 Fed. Reg. at 6,502–03. The problem here is that the agency was already aware of this dearth of genetic evidence in support of the subspecies classification at the time of the 2001 12–month Finding: "there is no apparent genetic distinction between the recognized eastern and western subspecies." *12–month Finding for a Petition To List the Washington Population of the Western Sage Grouse,* 66 Fed.Reg. at 22,-991. The absence of genetic support in 2001 did not change the agency's position on the validity of the western subspecies classification at that time. Why now?

We are also troubled by the agency's conflation of experts and their areas of authority—Aldrich and Duvall, Johnsgard, Benedict, Banks, Braun, and Pope are treated as equivalents, with no distinctions offered as to their areas of expertise, most significantly, whether they are taxonomists. While the others may be sage-grouse experts, only Dr. Richard Banks is a taxonomist. This is important as the agency's own Policy on Taxonomy states that "[w]hen only one credible taxonomic authority is available, we accept it." FWS Policy on Taxonomy, Dec. 13, 2002, at 3.

Although FWS was aware of Dr. Banks' position as the sole taxonomist consulted, the 90–day Finding does not address Dr. Banks' view that while the current taxonomic classification may be weak, this is a "speculation[ ] that can be tested only by the examination of additional specimens . . . and data" or his view that "it would be wise to continue to regard the [subspecies] as valid" for management purposes. Email from Dr. Richard Banks, Dec. 13, 2000. FWS's 90–day Finding runs counter to the opinion of the only taxonomist consulted and the position long-held by the agency and fails to offer any insight into why Dr. Banks and the agency's own position have been wrong.

Instead, Appellees argue that FWS's determination that current research rendered invalid the previous taxonomic classification of the western sage grouse as a separate subspecies of sage grouse involved the weighing of expert opinions by the agency, to which the courts should defer. While Appellees are correct that it is within the province of the agency to

resolve scientific disputes using its expertise, the deference accorded the agency's determination is bounded.[2] FWS has crossed this boundary.

Furthermore, the record indicates that FWS staff described several problems with the draft 90–day Finding. One example is the agency's use of movement data to undermine the subspecies in a manner inconsistent with the principle that movement of species and overlapping ranges/intergradation is "consistent with the concepts of speciation." Email from Chris Warren, Jan. 16, 2003. Such data should not be used to "conclude[ ] that the taxa are not valid." *Id.*

Another example is FWS's failure to discuss behavioral data supporting the subspecies. In the 90–day Finding, FWS argues that the subspecies definition is simply morphological, rooted in "slight color differences in the plumage." The agency does not acknowledge other evidence supporting the subspecies distinction, in particular its own 1998 study addressing behavioral differences. *90–day Finding on a Petition to List the Western Sage Grouse,* 68 Fed.Reg. at 6,502. At the least, under *Atchison, Topeka & Santa Fe Railway Company,* FWS must explain its analysis against the subspecies classification, the factors relied upon, and must account for the scientific principles and expert opinions which argue against the agency's change of course. FWS has failed to do so. The serious inconsistencies in the 90–day Finding render the discretionary decisionmaking of the agency and its decision to no longer recognize the western subspecies of the greater sage grouse arbitrary and capricious. Accord-

ingly, we reverse summary judgment and remand to the agency for reconsideration.

▬ Appellants also contend that FWS was arbitrary and capricious in finding that the western sage grouse was not a distinct population segment. FWS applied the criteria set forth in its *Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act,* 61 Fed.Reg. 4,722 (Feb. 7, 1996). Appellants take issue primarily with the agency's use of terms and weighing of evidence, which are matters properly within the discretion of the agency. The agency's failure to acknowledge its own study identifying behavioral differences is troubling. However, this issue alone does not support the conclusion that FWS acted arbitrarily and capriciously in determining that the western sage grouse is not a distinct population segment. *Nat'l Ass'n of Home Builders v. Norton,* 340 F.3d 835, 843 (9th Cir.2003).

▬ Finally, Appellants contend that the district court erred in refusing to reopen discovery. Even if Appellants diligently pursued prior discovery opportunities, they do not show how additional discovery in this case would have precluded summary judgment. *Theis Research Inc. v. Brown & Bain,* 400 F.3d 659, 666 (9th Cir.2005).

REVERSED and REMANDED.

---

**2.** Defendants cite *Brower v. Daley* for the proposition that "where there are competing expert opinions, 'it is the prerogative of [the Secretary] to weigh those opinions and make a policy judgment based on the scientific data.'" 93 F.Supp.2d 1071, 1082–83 (N.D.Cal.2000). The very next paragraph in the opinion, which Appellees do not cite, discusses the boundary of an agency's discretion: "The presumption of agency expertise may be rebutted if its decisions, even though based on scientific expertise, are not reasoned." *Id.*