BEEZER, GRABER, and FISHER, Circuit Judges,
concurring in the denial of rehearing en banc:
We believe that the panel’s unanimous decision affirming the district court was sufficient, in its own right, to justify denying a rehearing en banc. However, we write separately, concurring in that denial, to respond to the dissent to the denial of rehearing en banc.
I
The dissent argues that we erred by failing to consider Federal Rule of Civil Procedure 5.2(a). Dissent at 1188. Rule 5.2 is entitled “Privacy Protection for Filings Made with the Court” and subsection (a) states the following:
Redacted Filings. Unless the couH orders otherwise, in an electronic or paper filing with the court that contains an individual’s social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:
(1) the last four digits of the social-security number and taxpayer-identification number;
(2) the year of the individual’s birth;
(3) the minor’s initials; and
(4) the last four digits of the financial-account number.
Fed.R.Civ.P. 5.2(a) (emphasis added).
The dissent correctly states that “[n]either the magistrate judge, nor the district *1195 judge, even mentioned, let alone considered, Rule 5.2(a) when denying the plaintiffs’ request for anonymity; nor did the panel when reviewing the denial.” Dissent at 1187. We point out, first, that neither party brought it up before the magistrate judge, the district judge, or in their respective briefs before this court. See O’Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1063 n. 3 (9th Cir.2007) (holding that arguments not raised before the district court generally are waived); Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir.1999) (holding that arguments not raised in a party’s opening brief generally are waived).
Second, a plain reading of the text reveals why the plaintiffs may have chosen not to invoke this rule. Rule 5.2(a) permits minors to proceed with their initials, not as “Doe” or otherwise anonymously. There are only so many potential litigants in this suit; to reveal their initials might, for many, effectively reveal their identities. Therefore, the only relief that Rule 5.2(a) could have provided to the plaintiffs apparently did not interest them. The plaintiffs sought anonymity, not veiled identification.
Additionally, it is possible that some of the plaintiffs were 16 or 17 years old, meaning that they would have turned 18 years old before the litigation concluded. Because Rule 5.2(a) would not have protected them after their 18th birthdays, this may be another reason why the plaintiffs did not invoke the rule.
If the plaintiffs had made a Rule 5.2(a) claim, they may have been able to proceed with only their initials appearing. But we also note that nothing in the rule mandates veiled identity for minors. The statute gives the district judge discretionary power to permit the use of a minor’s initials; it does not mandate a particular result. See Rule 5.2(a)(holding that minors “may” use their initials “[ujnless the court orders otherwise”).
In either case, Rule 5.2(a) in no way undermines our opinion. On the contrary, it reinforces our belief that courts generally should remain open: Congress could have written Rule 5.2(a) to allow child litigants to proceed as Does or otherwise anonymously, but it did not.
II
Setting aside the Rule 5.2(a) argument, the dissent presents us with a rather Faustian choice between anonymity and civil rights litigation on one side, and disclosure and violence on the other. But, as the discussion below will show, this is a false choice.
To begin, the dissent asserts that disclosure in cases like these would put would-be plaintiffs’ “physical and mental well-being at risk,” Dissent at 1183-84, thereby discouraging civil rights litigation. The panel did not take lightly the possibility that civil rights litigation may be chilled by disclosure. But the test that we apply today has been around since 2000, Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1069 (9th Cir.2000), with no apparent effect on civil rights litigation. In fact, historically, the most important civil rights cases involving juveniles have all been cases where the plaintiffs used their real names, rather than pseudonyms. This is especially true in the context of education generally,[1] and of cases that have chal *1196 lenged Hawaiian entitlements particularly.[2] The history of civil rights litigation before and after the Advanced Textile test demonstrates that there is no risk that our decision will chill future litigation.
The dissent also believes that disclosure would place these litigants in particular at great risk. Here the dissent simply disagrees with the district judge’s factual finding that the Doe children do not reasonably fear severe harm. Taking the internet postings at face value, the dissent would have us fear for the children’s lives if the suit were to move forward without anonymity. But, as we explained in our opinion, a fair reading of the record reveals that the district court’s factual finding was not clearly erroneous.
Consider, for instance, that in the past students have used their real names when challenging Kamehameha’s admissions processes.[3] Not only that, those students have since prevailed and enrolled in the school, with no incidents whatsoever, either in class or in public. See Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate, 596 F.3d 1036, 1045 (9th Cir.2010) (“Doe II”)-, see also Samuel P. King & Randall W. Roth, Broken Trust: Greed, Mismanagement, & Political Manipulation at America’s Largest Charitable Trust 45 (2006) (describing how Kamehameha’s student body has changed drastically as “each generation of children had a lower quantum of Hawaiian blood”). Moreover, the district court weighed the comments regarding violence at Kamehameha against the plaintiffs’ own statements that they did not fear “possible retaliation and ostracism at [Kamehameha Schools] if and when they are admitted.” Doe II, 596 F.3d at 1040-41.
The district judge was able to review carefully all the evidence presented before concluding that “Plaintiffs continue to establish, at most, that they are vulnerable children who have a reasonable fear of social ostracization and negative press for *1197 their involvement in this case.” Given the Plaintiffs’ own statements and the history of nonviolence towards non-Hawaiian admitted students, we concluded that the district court did not clearly err.
Ill
Finally, the dissent criticizes the panel for using the five-factor test that we are compelled to apply in cases like this one. Dissent at 1187-88. But often in complex cases where there are various competing concerns that must be weighed in tandem, only a multi-factor test will do. Here we must consider five elements: the severity of the threat; the reasonableness of the anonymous party’s fear of that threat; any vulnerabilities peculiar to the anonymous party; the prejudice that anonymity would present to the opposing party; and the public interest. Doe, 596 F.3d at 1042. A five-factor test is therefore necessary to ensure that each of the concerns is considered in its own right.
The dissent also alleges that we are amending the Advanced Textile test by requiring that a plaintiff show “both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable.” Id. at 1043. But read closely, this objection is simply a repackaged objection to our decision to analyze these factors together, an approach that is both logical and pragmatic. For instance, a plaintiff may fear extraordinary harm, but such fear should not matter if it is wholly unreasonable. See id. at 1044. And conversely, it should not be sufficient for a plaintiff to reasonably fear any slight harm or to seek anonymity in order “to avoid the annoyance and criticism that may attend any litigation.” James v. Jacobson, 6 F.3d 233, 238 (4th Cir.1993). Contrary to the dissent’s assertion, our approach in this regard does not conflict with Advanced Textile. Indeed, the requirement that a plaintiff reasonably fear sufficiently “severe” harm comes straight from the Advanced Textile opinion, which concludes: “We hold that where, as here, the named plaintiffs ... demonstrate that they have an objectively reasonable fear of extraordinarily severe retaliation, they may conceal their identities from defendants.... ” 214 F.3d at 1063 (emphasis added). Advanced Textile asks whether “ ‘a reasonable person would believe that the threat might actually be carried out.’ ” Doe, 596 F.3d at 1044(quoting Advanced Textile, 214 F.3d at 1071). Other circuits require even more. See, e.g., Doe v. Frank, 951 F.2d 320, 324 (11th Cir.1992) (per curiam) (requiring “real danger of physical harm”).
The dissent would boil the test down to one factor: the vulnerability of juveniles. Dissent at 1189-90. But treating the age of the plaintiff as an overriding factor is not what our precedent requires. As we wrote, the vulnerability factor is certainly one that weighs in favor of anonymity, but it is still only one factor — not the only factor. Accord Doe v. Stegall, 653 F.2d 180, 186 (5th Cir.1981) (“Again, we do not mean to imply that all civil rights suits mounted in the name of children may be prosecuted anonymously. Rather, we view the youth of these plaintiffs as a significant factor in the matrix of considerations arguing for anonymity here.”).
Finally, we disagree that denying anonymity to child plaintiffs is “out-of-step” with the other circuits, Dissent at 1185, and the “universal practice of the American court system,” Dissent at 1190. The dissent’s assertion begs the question: what is the “universal practice”? Stegall is the only circuit case to conclude that a district court erred in denying Doe status to child plaintiffs, and the court there went to great lengths to point out how exceptional its grant of anonymity truly was. Furthermore, that court’s mention of a “universal practice” is contrary to the dissent’s view: “We conclude that the almost uni *1198 versal practice of disclosure must give way in this case to the privacy interests at stake.” Stegall, 653 F.2d at 186 (emphasis added).
Motions to proceed anonymously have been litigated rarely, especially at the appellate level. This is the first published Ninth Circuit case to reach the question of a plaintiffs motion to proceed anonymously since Advanced Textile was decided ten years ago.[4] Far from providing support to the dissent’s argument, its citations to case law and statutes merely show that some child plaintiffs have been granted Doe status, some legislation provides for Doe status, and some district courts have used their discretion to grant Doe status. But overall it is clear that there remains a presumption against anonymity.

. See, e.g., Grutter v. Bollinger, 539 U.S. 306, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003) (challenge to affirmative action scheme at public law school); Gratz v. Bollinger, 539 U.S. 244, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003) (challenge to affirmative action scheme at public university); Meredith v. Fair, 298 F.2d 696 (5th Cir.1962) (challenge to racial segregation at public university).
*1196 Juvenile civil rights plaintiffs have also proceeded under their own names in the education context. See, e.g., Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (constitutional challenge to recital of prayer at public school graduation ceremony); Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (section 1981 challenge to whites-only admission policies of two private schools in Virginia); Lau v. Nichols, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974) (challenge to public school system's failure to provide English language instruction to students of Chinese ancestry); Sch. Dist. of Abington Twp. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (constitutional challenge to recitation of Bible verse and prayer in public school); Brown v. Bd. of Educ., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (challenge to segregation in public schools); Minersville Sch. Dist. v. Gobitis, 310 U.S. 586, 60 S.Ct. 1010, 84 L.Ed. 1375 (1940) (constitutional challenge to mandatory recital of pledge of allegiance in public school).

. See, e.g., Rice v. Cayetano, 528 U.S. 495, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000) (section 1983 challenge to Hawaiian ancestry requirement for voting for trustees of Hawaii's Office of Hawaiian Affairs); Arakaki v. Lingle, 477 F.3d 1048 (9th Cir.2007) (section 1983 challenge to State of Hawaii programs restricting benefits to "native Hawaiians” or "Hawaiians''); Carroll v. Nakatani, 342 F.3d 934 (9th Cir.2003) (section 1983 challenge to provision of Hawaii Constitution creating agencies that allocate benefits to Native Hawaiians); Arakaki v. Hawaii, 314 F.3d 1091 (9th Cir.2002) (section 1983 challenge to constitutional and statutory requirements that trustees of the Office of Hawaiian Affairs be citizens of Flawaiian ancestry); Mohica-Cummings v. Kamehameha Schs./Bernice Pauahi Bishop Estate, No. 03-cv-00441 (D.Haw.2003) (juvenile plaintiff challenging Kamehameha’s admission policy).

. See, e.g., Mohica-Cummings v. Kamehameha Schs./Bernice Pauahi Bishop Estate, No. 03-cv-00441 (D.Haw.2003) (juvenile plaintiff challenging Kamehameha's admission policy).

. There were two unpublished decisions. See Fernandez v. Nevada, 361 Fed.Appx. 859, 859 (9th Cir.2010) (holding the district court did not abuse its discretion in denying anonymity); Doe v. Bergstrom, 315 Fed.Appx. 656, 656-57 (9th Cir.2009) (same).